IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-31040
Summary Calendar

_____

PENNZOIL EXPLORATION & PRODUCTION CO,

Plaintiff-Counter Claimant-Appellant,

v.

OXY USA INC,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(94-CV-550)
_____

September 18, 1996

Before KING, HIGGINBOTHAM, and STEWART, Circuit Judges.

PER CURIAM:[*]

Pennzoil Exploration and Production Company appeals the district court's denial of its

motion for judgment as a matter of law or alternatively for a new.  Finding no error, we affirm.

_____

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

# I. BACKGROUND

## A. FACTS

Taken in the light most favorable to the verdict, the facts are as follows. On March 12, 1972, the owners of a federal offshore oil and gas lease for West Cameron Parish Block 587 ("Block 587") entered into a Joint Operating Agreement to govern the rights and responsibilities of the leaseholders. Among those entering the agreement were Pennzoil Exploration and Production Company ("Pennzoil") and Cities Service Oil Company, to which Oxy U.S.A., Inc. ("Oxy") is the successor.

In May of 1983, Pennzoil proposed a project to build a platform to service part of Block 587 and its neighbor, Block 573. Oxy elected not to participate in the construction of the platform or any wells thereon or in the production from those wells. The parties memorialized this agreement in their Platform Sharing Agreement ("PSA") in the fall of 1984.

Beginning in March of 1985, Pennzoil sent to all of the lease owners, over 500 parties, its quarterly payout statements that included the list of costs to be recovered from the parties involved in the PSA. Apparently by mistake, Oxy was shown on the quarterly payout statements as a party from whom costs had to be recovered. This error implied that Oxy could regain an interest in that platform and its wells after certain percentages of costs had been recovered out of the production from the wells, even though the PSA prohibited any party who had not participated in the construction of the platform from regaining any interest in any well on the platform.

Once this error entered Pennzoil's system, it went undetected for many years. After the percentages of costs had been recovered out of production, Pennzoil began crediting Oxy for gas

production from the well and charging it for its share of the operating expenses as if Oxy had an ownership interest. Pennzoil finally discovered the error in September of 1993, some ten years after Pennzoil originally proposed erecting the platform. Pennzoil sought to recover in this litigation the value of the credits it had mistakenly "paid" Oxy, while Oxy asserted that it was entitled to the credits.

## B. PROCEDURE

Pennzoil brought suit in the Western District of Louisiana seeking a declaratory judgment that Oxy has no ownership interest in the well and seeking return of the value of the gas credited to Oxy. Pennzoil claimed the value of the credited gas was $755,601, based on the testimony of Don Arnold, Pennzoil's accountant. Oxy tried to enter evidence that the value of the gas was only $403,388, but the court excluded that evidence on Pennzoil's motion. Thus, Don Arnold's testimony was the only evidence as to the amount of damages. Although Oxy was unable to present its counter-evidence, it attacked the credibility of Don Arnold.

The jury returned a verdict finding that Oxy had no ownership interest in the well, but that the damages were zero dollars. After the trial, Pennzoil moved for judgment as a matter of law or in the alternative a new trial. The court denied the motion.

## II. DISCUSSION

## A. JUDGMENT AS A MATTER OF LAW

In order to obtain a reversal of the district court's order denying its motion for judgment as a matter of law, Pennzoil must show that all of the evidence and reasonable inferences taken in the light most favorable to Oxy point so strongly and overwhelmingly in favor of Pennzoil that no

3

reasonable jury could arrive at a contrary decision. *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 266 (5th Cir. 1994); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969). It is the function of the jury, not the trial or appellate court, to determine the credibility of witnesses. *Hiltgen v. Sumrall*, 47 F.3d 365, 700 (5th Cir. 1995). In reviewing a motion for judgment as a matter of law in an action tried by a jury, the jury verdict must be upheld unless there is no legally sufficient evidentiary basis for the jury's finding. *Id.*; *see* FED. R. CIV. P. 50(a)(1).

Pennzoil argues that the district court should have granted judgment as a matter of law on the damages issue because the testimony of Don Arnold, Pennzoil's accountant, was "uncontradicted" and because Oxy "did not impeach Arnold or demonstrate any inconsistencies or errors in his testimony regarding the calculation." Oxy contends that it generally impeached Arnold and showed him untrustworthy. During Oxy's cross-examination of Arnold, Oxy presented evidence tending to show that Arnold did not know who made the original accounting mistake and that he and his department had made many mistakes throughout the past ten years. In its closing argument, Oxy stated:

> What amount of money does Oxy owe Pennzoil as a result of any mistake that might have been made? . . . . I mean no disrespect to Mr. Arnold when I point out that Mr. Arnold has never done anything right in connection with this case during the last ten years. If you find that Pennzoil has the burden of proving what was received in error, I don't think they have done it through Mr. Arnold's testimony because I don't believe, ladies and gentlemen, that it would be reasonable for you to ask that Oxy pay eight hundred thousand dollars to Pennzoil on the basis of somebody who has made so many mistakes.

Thus, Oxy maintains that the jury could have found Arnold's testimony untrustworthy, leaving Pennzoil with no evidence to meet its burden of proof on damages.

In the order denying the motion for judgment as a matter of law, the district court stated:

4

Pennzoil admits that as the plaintiff it had the burden of proving its right to restitution by a preponderance of the evidence. Therefore, if the jury concluded that Pennzoil had not met its burden of proof on the issue of damages, a legally sufficient basis for the jury's verdict would exist. As the credibility of Don Arnold was pivotal to his testimony and as the jury could have found Arnold not to be credible therefore no basis for establishing the amount of an award, there is a basis upon which the jury verdict could be upheld.

We agree with the district court's analysis. In reviewing a motion for judgment as a matter of law in a jury case, we must uphold the verdict if there is any sufficient basis for the jury's finding. *Hiltgen*, 47 F.3d at 700. It is the function of the jury to determine credibility of the witnesses, and it is not our place to second guess the jury. *Id.* The jury could have been persuaded by Oxy's impeachment of Arnold and chosen to discredit Arnold in full or in part. Because this theory presents a sufficient basis for upholding the jury's finding, the district court did not err in denying Pennzoil's motion for judgment as a matter of law.

## B. MOTION FOR NEW TRIAL

We review the district court's ruling on a motion for new trial for abuse of discretion. *Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88 (5th Cir. 1995). Our review is particularly deferential when the district court denies the motion and leaves the jury's findings undisturbed. *Id.* "The district court abuses its discretion if 'there is an absolute absence of evidence to support the jury's verdict.'" *Polanco v. City of Austin*, 78 F.3d 968, 980 (5th Cir. 1996) (quoting *Roberts v. Wal-Mart Stores, Inc.*, 7 F.3d 1256, 1259 (5th Cir. 1993)). It is not an abuse of discretion to uphold the jury's verdict by accepting the jury's evaluations regarding the credibility of witnesses. *Id.*

Pennzoil requested a new trial on the basis that the jury's finding of zero damages is against the clear weight of the evidence. However, as stated above within the discussion of

judgment as a matter of law, the jury could have chosen not to credit Don Arnold's testimony, leaving Pennzoil with no evidence to meet its burden of proof on damages.[1] Thus, the trial court did not abuse its discretion by denying a new trial because there is an adequate basis for the jury's finding. *Polanco*, 78 F.3d at 980.

Pennzoil also asserts that a new trial should have been granted on the grounds that the jury verdict was the result of passion or prejudice. Pennzoil argues that Oxy asked questions of one of Oxy's witnesses, knowing it would elicit testimony regarding damages that the court had already ruled inadmissible. According to Pennzoil's theory, Oxy's questioning in this area put Pennzoil in the position of having to object and obtain an evidentiary ruling in the presence of the jury. This gave the jury the impression that Oxy was being unfairly denied the opportunity to present evidence and that the Pennzoil had something to hide. We are not persuaded that this argument provides any basis for setting aside the jury verdict.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[1]Pennzoil insists that because Oxy has admitted that the mistakenly credited gas has *some* value that we must remand for a new trial on damages to determine the amount. However, Pennzoil chose to have only one witness on damages, and the jury apparently did not credit the witness's testimony. Pennzoil is not entitled to a new trial simply because its strategy in the first trial did not work.